623 P.2d 1235

**Deeanna MANNING, Plaintiff-Appellant,**

v.

**SUMMIT HOME INSURANCE COMPANY, Defendant-Appellee.**

No. 1 CA–CIV 4547.

Court of Appeals of Arizona,
Division 1,
Department C.

Decided Oct. 9, 1980.

Rehearing Denied Nov. 19, 1980.

Review Denied Dec. 9, 1980.

Johnson, Jessen, Dake & Oplinger by Richard H. Oplinger, James Vieh, Phoenix, for plaintiff-appellant.

David S. Rosenthal, P. C. by David S. Rosenthal, Phoenix, for defendant-appellee.

## OPINION

CONTRERAS, Judge.

In this action for declaratory relief, the trial court, upon cross-motions for summary judgment, entered judgment in favor of the appellee insurance carrier. The appellee had previously denied uninsured motorist coverage to appellant who was struck and injured by an uninsured motorist as she was standing near a car waiting to assist the named insured with the task of putting tire chains on the rear tires of the car. In entering judgment, the court expressly determined that no coverage was available to appellant under the uninsured motorist provisions of appellee's liability policy and appellee had no obligation to proceed with arbitration.

The determinative question in this case of first impression in Arizona is whether appellant falls within the policy's uninsured motorist coverage as a person "occupying" the motor vehicle when the term "occupying" is defined in the policy as "in or upon or entering into or alighting from" the insured vehicle.[1] Based upon the record

---

1. Under coverage K—Uninsured Motorists, the policy provides:

I. Damages for Bodily Injury Caused by Uninsured Automobiles: The company will pay all sums which the *insured* or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, . . .

presented to the trial court on cross-motions for summary judgment, it is our opinion that coverage has been established as a matter of law. We therefore reverse the summary judgment in favor of appellee and enter judgment in favor of appellant, finding that the insurance policy in question provided coverage for her.

The appellee issued a policy of automobile liability insurance to Joey Santa Maria which included uninsured motorist coverage. While this insurance policy was in effect, appellant and Santa Maria took a Christmas vacation trip to Colorado in the insured vehicle. On January 5, 1977, while returning to Phoenix, they encountered ice on Interstate 40 east of Flagstaff. When they came upon the ice, they saw a sign warning of icy conditions. At this same time, they saw a semi-truck that had jack-knifed on the highway and also observed cars nearby stopped to put on tire chains. After stopping and taking a photograph of the semi-truck, Santa Maria drove a short distance further when he decided to put tire chains on his vehicle.

After stopping, appellant and Santa Maria got out of the car, took the chains out of the trunk, and began straightening them so the chains would be better positioned to put on the rear tires. While Santa Maria was working with the chains, appellant decided to take photographs of him. Appellant got a camera from inside the car, walked back behind Santa Maria, and took a photograph. What then transpired is best understood by reviewing appellant's deposition testimony. In response to questions asked by appellee's attorney, appellant stated:

A  I went back to the car, to the passenger's side, and put the camera away on the front seat on the floor. All of a sudden, I heard Joey call me. He said,

"Dee, come here. I need some help." So I came outside the car and was standing behind the license plate waiting for him to finish straightening that out, and then he went around the side of the car and started positioning the links under it, the chains under the car.

Q  Which tire are we talking about?

A  The one on the driver's side in the rear.

Q  What were you doing at that point in time?

A  Waiting for him to finish getting them in position so I could help him raise them.

Q  What happened then?

A  I was standing there on the driver's side of the car in the back between the license plate and the rear corner, and all of a sudden I got hit by a car.

Q  How far were you from the left corner of the car when that happened?

A  You mean a position between, say, the license plate and the corner of the car, or do you mean in distance away from the car?

Q  In distance away from the car.

A  Not more than two or three feet. I could reach out and touch it.

.    .    .    .    .

Q  Can you estimate in time how long transpired between the time you came from the passenger's side of the vehicle until the time you were struck by the car?

A  I have no idea. It wasn't very long.

Q  Was it more than five minutes?

A  No.

Q  More than one minute?

A  If anything, it was close to one minute or under.

sustained by the *insured*, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile....

.    .    .    .    .

II.  Definitions:
    (a) "insured" means:
        (1) the named insured as stated in the policy (herein also referred to as the "principal named insured") and any person designated as named insured in the schedule and, while

residents of the same household, the spouse of any such named insured and relatives of either;
        (2) any other person while *occupying* an insured automobile; and

.    .    .    .    .

(e) Occupying. The word "occupying" means in or upon or entering into or alighting from. (emphasis added)

Q What was Joey doing?

A Positioning the chains to go under the tire so that we could both put them up on the tire and attach them.

Q You weren't involved in doing that?

A No. He said I got in the way.

Q So as I understand your testimony, Dee, he was positioning the chain to go underneath the left rear tire of the vehicle?

A Correct.

Q By left, I mean the driver's side rear?

A Yes.

Q While he was in the process of doing that, you were standing approximately two to three feet to the rear of the vehicle?

A Yes.

Q You were waiting for him to finish doing that?

A Right. Then I could help.

Q It was at that point in time that you were struck by the vehicle?

A Yes.

Q What were you doing to help?

A I was going to help attach the chains to the car. It needs two people. See, you raise the two ends of the tire chains up and you put them around and hook them on, and the chains are rather cumbersome. So you need two people to do it. We had had some difficulty with them before when we had attached them, so it became like a system. I would always help him attach the chains.

Q You had attached chains to this vehicle previously on this trip?

A Yes, several times. After the snows started in Colorado and Arizona.

Q At the time that you were struck by the vehicle, am I correct that you were standing with your hands in your pockets?

A I do not recall, but that would seem most probable, because it was cold.

In moving for summary judgment, both parties alluded to appellant's deposition testimony, and from the record, it appears there is no genuine factual dispute as to what transpired from the time the car was stopped for the purpose of putting on tire chains until appellant was struck by an automobile driven by an uninsured motorist.

The appellant is covered by the uninsured motorist provision of Santa Maria's policy if she was "occupying" the Santa Maria vehicle at the time of the accident. This determination is dependent on whether she was "in or upon or entering into or alighting from" the vehicle, in accordance with the definition of "occupying" set forth in the policy. Since it is clear that appellant was not "in" or "entering into" or "alighting from" the vehicle, the question is further reduced to whether appellant was "upon" the vehicle at the time she was struck. Appellant here contends that by a reasonable construction of the policy provision in the instant factual context, she was "upon" the insured Santa Maria vehicle at the time of the accident. Appellee, in response, contends that the word "upon" is not subject to such construction and that inasmuch as appellant was not in physical contact with the car, was standing two or three feet away from the car, was not actively engaged in placing the tire chains on the vehicle, and was looking at the sky with her hands in her pockets at the time of the accident, she cannot be said to have been "upon" the vehicle.

■ In construing insurance policy provisions which are not ambiguous, they must be given their plain and ordinary meaning. *Parks v. American Casualty Co.*, 117 Ariz. 339, 572 P.2d 801 (1977); *Stephan v. Allstate Insurance Co.*, 26 Ariz.App. 367, 548 P.2d 1179 (1976). Where various jurisdictions reach different conclusions as to meaning, intent, and effect of the language of an insurance contract, such fact is a strong indication that the policy provision is ambiguous. *Federal Insurance Co. v. P. A. T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976); *Thompson v. Government Employees Insurance Co.*, 122 Ariz. 18, 592 P.2d 1284 (App.1979). In the present case, ambiguity exists with respect to the language under consideration as is demonstrated by

the conflicting conclusions reached in other jurisdictions which have construed the term "upon" the automobile. *See* decisions cited in Annot., 42 A.L.R.3d 501, 509–16 (1972). While we will not rewrite an insurance policy to avoid harsh results, *Stearns-Roger Corp. v. Hartford Accident & Indemnity Co.,* 117 Ariz. 162, 571 P.2d 659 (1977); *Mission Insurance Co. v. Nethers,* 119 Ariz. 405, 581 P.2d 250 (App.1978), we must construe ambiguous provisions most favorably to the insured. *Parks v. American Casualty Co., supra; State Farm Mutual Automobile Insurance Co. v. Paynter,* 122 Ariz. 198, 593 P.2d 948 (App.1979); *Ranger Insurance Co. v. Lamppa,* 115 Ariz. 124, 563 P.2d 923 (App.1977).

While one line of authority holds that physical contact with the automobile is necessary before the insured is "upon" the automobile, *e. g., Testone v. Allstate Insurance Co.,* 165 Conn. 126, 328 A.2d 686 (1973); *Green v. Farm Bureau Mutual Automobile Insurance Co.,* 139 W.Va. 475, 80 S.E.2d 424 (1954), we believe that such an overly narrow construction of the word "upon" is unwarranted. The Supreme Court of Michigan observed that a construction which would require actual physical contact with the vehicle in question would create "on-again off-again" coverage depending upon the precise stage of activity in which a person is engaged. The court observed:

> While getting out of the auto, a person would be an occupant and covered; after closing the door but still touching it, there would be coverage; after removing his hand from the door there would be no coverage; while walking to the front of the auto, there would be no coverage; after arriving at the front of the auto, and placing his hand on the front hood, there would be coverage again. . . .

*Nickerson v. Citizens Mutual Insurance Co.,* 393 Mich. 324, 331, 224 N.W.2d 896, 899 (1975). We do not believe that the coverage intended is wholly dependent upon actual physical contact in all instances. Such an unbending requirement is both arbitrary and illusory.

■ We approve the following general statement found in the case of *Madden v. Farm Bureau Mutual Automobile Insurance Co.,* 82 Ohio App. 111, 79 N.E.2d 586 (1948):

> It seems to us that it was the intent of the insurer, by the language used, to provide for coverage in every case in which the owner was using the automobile and in such a position in relation thereto as to be injured in its use. In reaching a conclusion on this subject, not only the act in which the insured was engaged at the time, but also his purpose and intent must be considered. So construed, the entire paragraph creates a field of coverage broader than a narrow construction of the words considered separately and independent of one another would indicate.

82 Ohio App. at 114–15, 79 N.E.2d at 588. The same general approach to construction of the language in question has been applied in *Cocking v. State Farm Mutual Automobile Insurance Co.,* 6 Cal.App.3d 965, 86 Cal.Rptr. 193 (1970); *Wolf v. American Casualty Co.,* 2 Ill.App.2d 124, 118 N.E.2d 777 (1954); *Nickerson v. Citizens Mutual Insurance Co., supra; Robson v. Lightning Rod Mutual Insurance Co.,* 59 Ohio App.2d 261, 393 N.E.2d 1053 (1978); and *Moherek v. Tucker,* 69 Wis.2d 41, 230 N.W.2d 148 (1975). In *Cocking,* the California court, in a factual situation very similar to that here presented, concluded that uninsured motorist coverage did obtain and that the injured person was "upon" the automobile, although he did not have direct physical contact with the automobile at the time he was struck by a vehicle driven by an uninsured motorist. In our opinion, the better reasoned cases indicate that if one's activities are in such close proximity to the car and so related to its operation and use that they are an integral part of one's occupancy and use of the car, then one may be said to be "upon" the car. Such a construction is consistent with the policy and principles of interpretation accorded safety responsibility legislation and the statutorily mandated uninsured motorist coverage in this jurisdiction. *See, e. g., State Farm Mutual Automobile Insurance Co. v. Tarantino,* 114 Ariz. 420, 561 P.2d 744 (1977); *Geyer v. Reserve Insurance Co.,* 8 Ariz.App. 464, 447 P.2d 556 (1968).

Adverting to the facts of the present case, the appellant was clearly in close proximity to the automobile at the time of the accident. The more difficult question is whether appellant's activity was an integral part of the occupancy and use of the vehicle. This determination turns on whether appellant was participating in the activity of putting tire chains on the car at the time of the accident. No question appears as to the necessity or the desirability of putting the chains on the car in furtherance of its legitimate use and operation. It is true that, at the time of the accident, appellant was waiting to perform specific physical assistance, but the record does not suggest any inconsistent activity or abandonment of purpose. While her preceding photographic activities could not be said to be a part of the tire chaining effort, appellant had put the camera away and had been expressly summoned to the rear of the vehicle by Santa Maria to assist him in fastening the chains to the left rear tire. The record clearly indicates that appellant was standing two or three feet from the rear of the car waiting to fulfill her function in this process and had been so standing for a period of one minute or less to five minutes at the time the accident occurred.

Appellee contends that even if appellant intended to assist Santa Maria in the chaining operation, intention alone is insufficient to create coverage. In this regard, appellee cites *Testone v. Allstate Insurance Co, supra; New Amsterdam Casualty Co. v. Fromer*, 75 A.2d 645 (D.C.1950); and *Lautenschleger v. Royal Indemnity Co.*, 15 N.C. App. 579, 190 S.E.2d 406 (1972). While we agree with the proposition that intention alone would be insufficient, the operative facts here clearly indicate that not only had the appellant actually been actively participating in the overall tire chaining project, but also that her location at the time of the accident was controlled by the necessity of her continued participation. Therefore, this is not a case of mere intention.

We do not find within the four corners of the record before the trial court upon the parties' cross-motions for summary judgment a disputable factual issue in regard to appellant's participation in the task of putting tire chains on the car at the time of the accident. Accordingly, and as a matter of law, we hold that at the time of the accident, appellant's activities were in such close proximity to the car and so related to its operation and use as to be an integral part of her occupancy and use of the car. She was therefore "upon" the car within the meaning of the policy provision.

Since we do not find any dispute on factual issues and in view of our interpretation of the meaning of the subject language in the policy, the judgment of the trial court is reversed and the case remanded with instructions to enter judgment that coverage is available to appellant under the uninsured motorist provisions of appellee's liability policy and that appellee is obligated to proceed with arbitration.

Judgment is reversed and remanded with instructions.

OGG, P. J., and JACOBSON, J., concur.