Stephen GENTHNER

v.

**PROGRESSIVE CASUALTY INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 14, 1996.

Decided Aug. 22, 1996.

Michael J. Welch, Stephen Kottler, Hardy Wolf & Downing, P.A., Lewiston, for Plaintiff.

Victoria Powers, Erler & Powers, South Portland, for Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Plaintiff Stephen Genthner appeals from a summary judgment entered in the Superior Court (Lincoln County, *Marsano, J.*) denying his claim against defendant Progressive Casualty Insurance Company (Progressive) for injuries caused by an uninsured motorist. Genthner argues on appeal that the Superior Court erred as a matter of law in applying the language of Progressive's policy to the stipulated facts. We agree, and we vacate the judgment.

Genthner, a passenger in a vehicle insured by Progressive, was struck by a vehicle driven by a hit-and-run motorist immediately after a collision between the vehicle operated by that motorist and the insured vehicle. Genthner sought compensation for his injuries from Progressive. Progressive denied uninsured motorist coverage on the basis that the policy covers a passenger only while "occupying" the vehicle. Genthner commenced the present action. The parties moved for summary judgment and submitted the case on a joint statement of material facts together with a copy of the insurance policy. The stipulated facts may be summarized as follows:

On the night of September 24, 1993, plaintiff Stephen Genthner was a passenger in William F. Conroy, Jr.'s station wagon, along with two other passengers. Conroy's station wagon was insured by Progressive for damages caused by an uninsured motorist. At approximately 12:45 a.m., as Conroy was driving the station wagon on a secondary road in Falmouth, it was rear-ended by a pickup truck. After impact, the truck continued to push the station wagon, and the bumpers locked together. Using evasive maneuvers, Conroy was able to unhook the

bumpers. He pulled ahead and stopped on the right side of the road after crossing a bridge. No one was injured. Conroy got out of his car to inspect for damage. The truck stopped on the bridge, and the driver remained in the truck. Conroy could not see the truck's license plate. Genthner and the other two passengers got out of the car. Conroy and Genthner both approached the truck for the purpose of obtaining its license plate number. Conroy and Genthner walked about 100 yards, towards the truck. As they approached the bridge, the truck began to "rev" its engine and then "floored it" across the bridge, swerving as it did so. Both men tried to get out of the way, but the truck struck Genthner, causing his injuries. The truck then sped away and remains unidentified.

Progressive's policy, in relevant part, states:

> We will pay damages, other than punitive or exemplary damages, for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle up to the limit of liability as defined in this Part. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured motor vehicle.

An "insured person" includes the policyholder or a relative, plus "any person occupying [the policyholder's] car." Occupying is defined as "in, on, getting into, out of or off."

Applying the stipulated facts to the policy language, the court ruled that Genthner was not an insured party under Progressive's policy. The court stated:

> [T]here is no causal connection between the incident which caused the Plaintiff's injuries and Mr. Conroy's car. Therefore, as a matter of law, the Plaintiff was not occupying the Conroy vehicle as that term is defined in the policy.

From this ruling, Genthner appeals.

■ Progressive focuses on the precise moment of injury and argues that Genthner was not then "in, on, getting into, out of or off" Conroy's vehicle. Genthner argues that although, in the abstract, the meaning of the term "occupying," may be clear, it becomes ambiguous when applied. We agree.

An insured carefully reading the policy language could not determine whether plaintiff's claim is covered. *See Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 384 (Me.1989) (an insurance contract is said to be ambiguous "if an ordinary person in the shoes of the insured would not understand that the policy did not cover" the claim). This latent ambiguity in the language of the policy is confirmed by an examination of the numerous appellate opinions dealing with this issue in other jurisdictions. Courts adopting a liberal interpretation of similar insurance contracts would generally find coverage on these facts because of the functional nexus between the insured vehicle and the claimant's injury.[1]

---

1. *See, e.g., Guarantee Ins. Co. v. Anderson*, 585 F.Supp. 408, 411 (E.D.Pa.1984) (Under New Jersey law, driver of commercial truck who had pulled onto side of highway to investigate cause of black smoke coming out of engine was "occupying" the truck as he stood on the side of the road and was struck by an uninsured motorist, as he "had not terminated his use [of the truck] but had merely stopped to determine the source of a problem with the truck."); *Manning v. Home Ins. Co.*, 128 Ariz. 79, 623 P.2d 1235, 1238 (App. 1980) (Passenger who was standing next to vehicle, waiting to render assistance to driver as he placed snow chains on tires, was "occupying" the vehicle when struck by an uninsured motorist because her activity was "so related to [her] occupancy and use of the car". The court adopted the liberal construction of the term in light of the policies expressed by the state's mandatory uninsured motorist coverage.); *Wolf v. American Casualty Co. of Reading, Pa.*, 2 Ill.

App.2d 124, 118 N.E.2d 777 (1954) (Driver who got out of his car after a traffic accident, to exchange information with other driver, was 'upon' his car when he was struck by a third, uninsured motorist as he stopped to write down his own license plate number.); *Michigan Mutual Ins. Co. v. Combs*, 446 N.E.2d 1001 (Ind.App., 2 Dist.1983) (Where brother of the owner of a disabled vehicle had arrived to render assistance to the vehicle, and had neither been a passenger in the disabled vehicle nor intended to become one, he was nonetheless "occupying" the vehicle as he rested his knees on the bumper and worked on the car's engine and was struck by an uninsured motorist, based on his "relationship" to the vehicle.); *Kentucky Farm Bureau Mutual Insurance Co. v. Gray*, 814 S.W.2d 928 (Ky.App., 1991) (Driver who had borrowed his grandmother's car and had pulled off the side of the road to assist a stranded motorist was "occupying" the car when he leaned over the engine of his grand-

Other courts, applying a more literal interpretation of the term "occupying," would deny coverage because of the absence of physical contact with the insured vehicle, or

mother's car and was injured as the disabled vehicle rolled into him.); *White v. Williams,* 563 So.2d 1316, 1318 (La.App., 3 Cir., 1990) (Passenger who had exited car to pay convenience store cashier for gas was "occupying" the car when he was struck by an uninsured motorist as he was crossing the parking lot to get back into the car, under the "relationship test": "His physical departure was solely for the purpose of performing an act that was physically and directly related to the car."); *Day v. Coca–Cola Bottling Company, Inc.,* 420 So.2d 518 (La.App., 2 Cir., 1982) (Where passenger and driver pulled over onto side of highway to assist a disabled vehicle, passenger was injured "while alighting from" the vehicle as he stood next to truck and was struck by a third vehicle; fact that passenger voluntarily placed himself in danger was irrelevant, as state law immunizing 'Good Samaritans' encouraged helping others in distress.); *Gentry v. Allstate Insurance Co.,* 208 Mich.App. 109, 527 N.W.2d 39 (1995) (Passengers of vehicle which had swerved into a ditch were "occupying" that vehicle as they stood on the side of the road waiting for the vehicle to be towed and were struck by an uninsured motorist.); *Rohlman v. Hawkeye Security Ins. Co.,* 190 Mich.App. 540, 476 N.W.2d 461 (1991) (Passenger who had gotten out of van on the side of the road to re-attach a trailer which was being towed by the van was "occupying" the van when he was struck by an uninsured motorist.); *Klein v. United States Fidelity and Guaranty Co.,* 451 N.W.2d 901 (Minn.App., 1990) (Driver who had gotten out of his truck to change a flat tire on the side of the highway was "occupying" his truck when he was struck by an uninsured motorist, under a "continuing relationship" test.); *Radmann v. Truck Ins. Exchange,* 660 So.2d 975, 977 (Miss., 1995) (Under Wisconsin law, a truck driver who had parked his vehicle in a parking lot, exited it, and started to cross a highway was still "vehicle-oriented" and thus was "occupying" the truck when he was struck by an uninsured motorist.); *Newcomb Hospital v. Fountain,* 141 N.J.Super. 291, 357 A.2d 836, 838 (1976) (Passenger of auto which was being serviced at a station by a mechanic was "occupying" the car when he stood and observed the mechanic and was injured by an explosion in the engine, because the service station was not the passenger's ultimate destination; rather, the driver and passenger intended to resume their trip as soon as the vehicle was serviced.); *Cepeda v. United States Fidelity and Guaranty Co.,* 37 A.D.2d 454, 326 N.Y.S.2d 864, 866 (1971) ("Where the passenger alights following some temporary interruption at a place other than his destination, remains in the immediate vicinity of the vehicle and there is every reason to believe that, had it not been for the accident, he would shortly have resumed his place in the vehicle, his status as a passenger has not changed."); *Etter v. Travelers Ins. Co.,* 102 Ohio App.3d 325, 657 N.E.2d 298 (Ohio App., 2 Dist., 1995) (Driver of borrowed vehicle which had swerved off high-

way onto median was "occupying" that vehicle when he and a state trooper tried to assist a second disabled vehicle and was struck by a third, uninsured vehicle; finding a "sufficient relationship" to the vehicle because the driver was still waiting for the tow truck, was within relatively close proximity to the car, and because assisting another disabled vehicle is "reasonably foreseeable".); *Robson v. Lightning Rod Mutual Insurance Co.,* 59 Ohio App.2d 261, 393 N.E.2d 1053 (Ohio App., 1978) (Where passenger and driver had not reached their final destination, but stopped at passenger's home to pick up a stereo, passenger was "occupying" the vehicle when he was struck by an uninsured motorist as he loaded the stereo in the trunk of the parked car, under the "relationship test".); *Mackie v. Unigard Insurance Co.,* 90 Or.App. 500, 752 P.2d 1266, 1269 (1988) (Where driver parked her car on the street, turned off the lights and engine, got out of the car and shut the door, she was still "occupying" the car as she retrieved packages out of the trunk and was struck by an uninsured motorist, because "opening a trunk for the purpose of removing objects is a course of conduct reasonably incidental to leaving and alighting from a car."); *Frain v. Keystone Insurance Co.,* 433 Pa.Super. 462, 640 A.2d 1352, 1356 (Pa.Super.1994) (Passenger who was re-entering vehicle and who injured herself in her haste to get out of the way of a runaway tractor trailer was "occupying" the vehicle for purposes of uninsured motorist coverage; a literal interpretation of ·"occupying" would require her to get in the vehicle and risk being killed by the tractor trailer, and as such is an absurd result advocating irresponsible behavior.); *Utica Mutual Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005, 1009 (1984) (driver of a vehicle involved in a collision with a second vehicle was "occupying" his vehicle after he retrieved items from his vehicle in response to a police officer's request, and was struck by a third, uninsured vehicle as he returned to the patrol car and was 97 feet away from the insured vehicle.) *General Accident Ins. Co. of America v. Olivier,* 574 A.2d 1240, 1242 (R.I., 1990) (Passenger of vehicle which had been in a collision was "occupying" the vehicle as she stood next to a police cruiser 117 feet away from the insured vehicle, waiting to speak with the police officer, when she was shot and killed by the other driver: "it was her status as a passenger in the insured vehicle that precipitated the whole unfortunate series of events."); *DeStefano v. Oregon Mutual Ins. Co.,* 762 P.2d 1123, 1126 (Utah App., 1988) (Plaintiff who exited stalled car, got gasoline from a service station, returned to stalled car and began pouring gasoline into its tank was "occupying" the stalled car when he was struck by an uninsured motorist, because "it [was] clear from the[ ] facts that plaintiff had every intention of immediately resuming his journey, and was in the process of doing so. All of [his] actions suggest a course of conduct reasonably incidental to [occupying] the vehicle.").

close proximity accompanied by an activity absolutely essential to operation of the vehicle.[2]

◼ When, as in the present case, an insurance contract is ambiguous, it is construed against the insurer in favor of coverage. *Gross v. Green Mountain Ins. Co.*, 506 A.2d 1139, 1141 (Me.1986), citing *Baybutt v. Commercial Union Ins. Co.*, 455 A.2d 914, 921 (Me.1983), overruled on other grounds, *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 387 (Me.1989). A reasonable reading of the policy would include Genthner's claim. He was a passenger in the insured vehicle at the time of the collision. But for the collision, he would have remained in the car. His effort to assist the driver in securing the license number of the other vehicle involved only a temporary interruption of the trip and was directly and reasonably related to the operation and use of the insured vehicle.

We decline to adopt a formula for defining the outer limits of a "reasonable reading" of the ambiguous policy language. The exact line between "reasonable" and "unreasonable" will have to be defined on a case-by-case determination. We can say only that the facts of this case fall within the boundary.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ., concurring.

DANA, Justice, dissenting.

I respectfully dissent. Because Genthner was neither "in, on, getting into, out of or off" the Conroy vehicle at the time of the "accident," he was not "occupying" the vehicle at that time. As a consequence, the Conroy insurance policy does not provide coverage. As applied to the facts of this case, it is difficult to envisage a less ambiguous definition of the word "occupying" than the one contained in the policy. If it is

---

2. *See, e.g., Cook v. Aetna Insurance Co.*, 661 So.2d 1169, 1171 (Ala.1995) (Where carpool was waiting outside passenger's residence, and passenger had crossed the street to buy a cup of coffee, passenger was not "getting in" the car for purposes of "occupying" it when he was struck by an uninsured motorist within a foot of the car. Because the passenger had left his jacket and his lunch box within his residence, the court concluded that he intended to first retrieve these items and then enter the car.); *West American Ins. Co. v. Lovett*, 519 So.2d 39, 40 (Fla.App., 5 Dist., 1987) (Driver of borrowed vehicle who pulled over to assist fatally injured biker involved in an accident with another vehicle was not "occupying" the borrowed vehicle when he got out of the vehicle and walked 100 feet away, towards the biker, and was struck by an uninsured motorist, because he "was not obligated to stop and render aid to the injured bicyclist in the first place."); *Calloway v. Allstate Insurance Co.*, 138 Ill.App.3d 545, 93 Ill.Dec. 32, 485 N.E.2d 1242 (1985) (Passenger of disabled vehicle who had walked 150 feet away from vehicle in order to find gasoline for vehicle was not "occupying" the vehicle when she was struck by an uninsured motorist, under a literal construction of the term.); *Breard v. Haynes*, 394 So.2d 1282 (La. App., 1 Cir., 1981) (Passenger in minor auto accident who left the vehicle and voluntarily stood next to a police officer, 75 feet away from the vehicle and near the median, for the purpose of unnecessary conversation with the officer, was

not "occupying" the vehicle when he was struck by an uninsured motorist, fifteen minutes after the first accident.); *Allstate Ins. Co. v. Graham*, 106 N.M. 779, 750 P.2d 1105 (N.M., 1988) (Where driver of borrowed vehicle had driven a friend to a service station to have her tire repaired, and then drove that friend to the friend's disabled car, driver was no longer "occupying" the borrowed vehicle when she got out and began to help friend to change a flat tire and was struck by an uninsured vehicle.); *Marcilionis v. Farmers Ins. Co. of Oregon*, 318 Or. 640, 871 P.2d 470 (1994) (Deaf driver of borrowed vehicle, who had pulled off to the side of the road in response to a woman waving to get his attention, and who had then chased the woman down the street after she had entered the car, grabbed the keys from the ignition, and run off, was not "occupying" the borrowed vehicle ·as he retrieved the keys from the middle of the street where she had dropped them and was struck by an uninsured motorist, under a literal interpretation of "occupying".); *Fulton v. Texas Farm Bureau Ins. Co.*, 773 S.W.2d 391, 392 (Tex.App.,— Dallas, 1989) (where passenger was walking across parking lot to solicit names of witnesses to a hit-and-run accident and the unidentified driver returned and intentionally struck passenger, said passenger was not "occupying" his friend's car at the time, because his efforts to collect witness information were "distinctly separate activities from his being a passenger in [his friend's] car.").

ambiguous, *any* reformulation would be as well. Labeling a word ambiguous, however, does not make it so. Genthner voluntarily left the insured vehicle and was walking away from it to identify the assailant. Progressive Casualty Insurance Company did not provide insurance for such an undertak-

ing. I would affirm the judgment of the Superior Court.[1]

1. Some courts that have ignored the "plain meaning" approach use a four part test to determine whether a person who is not actually in a vehicle or in direct physical contact with the vehicle, may be considered to be "occupying" the vehicle for purpose of uninsured motorist coverage; (1) there is a casual relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway oriented or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time. *Utica Mutual Ins. Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005, 1009 (1984). Applying this four part test to the facts of this case show that Genthner was not vehicle oriented because he was walking away from vehicle and his actions were not required as a result of the vehicle's condition and his attempt to get the truck's registration number was not essential to Conroy's vehicle's operation or was necessary to continue their trip. *See General Accident Ins. Co. v. Olivier,* 574 A.2d 1240 (R.I.1990).