United States Court of Appeals
For the First Circuit


No. 98-2158

NAUTILUS INSURANCE COMPANY,

Plaintiff, Appellant,

v.

MICHAEL G. JABAR, d/b/a MIKE'S ROOFING CO.,

Defendant, Appellee.



LISA A. VARANO AND STEPHEN M. VARANO,

Appellees.



STERN COMPANY, INC.,

Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]



Before

Torruella, Chief Judge,

Noonan and Lynch, Circuit Judges.

Kevin J. Beal, with whom Preti, Flaherty, Beliveau & Pachios,
L.L.C. was on brief, for appellant.
Laura A. Foggan, Daniel E. Troy and Wiley, Rein & Fielding on
brief for Insurance Environmental Litigation Association, amicus
curiae.
Joseph M. Jabar, George M. Jabar II, and Daviau, Jabar &
Batten on brief for appellee Michael Jabar d/b/a Mike's Roofing Co.
Michael J. Donlan, with whom Gene R. Libby and Verrill & Dana,
LLP were on brief, for appellees Lisa A. Varano and Stephen M.
Varano.



August 30, 1999
TORRUELLA, Chief Judge. Plaintiff-appellant Nautilus
Insurance Company ("Nautilus") appeals from the district court's
entry of summary judgment in favor of its insured, defendant-
appellee Michael G. Jabar, d/b/a Mike's Roofing Company ("Jabar"). 
In the underlying action, Nautilus sought a declaratory judgment
from the district court that it was not obligated to defend and/or
indemnify Jabar in connection with a civil action filed against
Jabar by Lisa and Stephen Varano ("the Varanos"). The district
court granted summary judgment in favor of Jabar on the ground that
the total pollution exclusion clause relied upon by Nautilus to
deny coverage was ambiguous as a matter of law. 
BACKGROUND
On or about June 3, 1997, the Varanos commenced a civil
action against Jabar in the United States District Court for the
District of Maine alleging that in February and March of 1995 Lisa
Varano was exposed to hazardous fumes discharged by roofing
products used by Jabar to repair the roof at Lisa Varano's place of
employment. The complaint alleges that due to the inhalation of
these fumes, Lisa Varano now suffers from occupational asthma. In
their complaint, the Varanos sought damages to compensate them for
Lisa's personal injuries and for Stephen's loss of consortium. The
complaint does not allege, nor has Nautilus ever suggested, that
Jabar in any way misused the roofing products that are alleged to
have caused Lisa Varano's injuries.
At the time of Lisa's exposure to the fumes, Jabar was
insured under a commercial lines insurance policy issued by
Nautilus. Jabar notified Nautilus of the suit against him, and
Nautilus undertook his defense, under a reservation of rights. 
Eventually, Nautilus concluded that it was not obligated
to defend or indemnify Jabar in connection with the Varanos' claims
due to the existence of a total pollution exclusion clause in
Jabar's policy. This clause excludes coverage for:
(1) 'Bodily injury' or 'property damage'
which would not have occurred in whole or in
part but for the actual, alleged or threatened
discharge, dispersal, seepage, migration,
release or escape of pollutants at any time.

. . . .

Pollutants means any solid, liquid, gaseous,
or thermal irritant or contaminant including
smoke, vapor, soot, fumes, acid, alkalis,
chemicals and waste . . . .

On September 9, 1997, Nautilus instituted the underlying
declaratory judgment action seeking a declaration that the claims
asserted against Jabar fell unambiguously within the scope of the
total pollution exclusion clause. On February 4, 1998, Nautilus
moved for summary judgment, asking the district court to rule, as
a matter of law, that Nautilus was not obligated to defend or
indemnify Jabar in connection with the Varanos' claims. Jabar
opposed the motion, and at the same time requested that summary
judgment be entered in his favor. By order dated April 29, 1998,
the district court granted Nautilus's motion only as to any claims
for indemnification for any award of punitive damages, and denied
it as to any claims for indemnification for any award of
compensatory damages. On October 1, 1998, the district court
granted summary judgment in favor of Jabar "on the same basis and
reasoning as the decision granting in part and denying in part
[Nautilus's] motion." This appeal followed.
DISCUSSION
We review the district court's grant of summary judgment
de novo. See Dominique v. Weld, 73 F.3d 1156, 1158 (1st Cir.
1996). The sole issue on appeal is whether the Varanos' claims
fall unambiguously within the scope of the total pollution
exclusion clause contained in the Nautilus policy. Nautilus argues
that the district court erred in concluding that the Varanos'
claims did not fall clearly within the scope of the exclusion
clause. Nautilus contends that there clearly was a "discharge,"
"dispersal," "release" or "escape" of toluene disocyanate ("TDI"),
a "pollutant," which caused "bodily injury" in the form of
occupational asthma to Lisa Varano. Jabar, on the other hand,
contends that the district court correctly concluded that the
exclusion clause is ambiguous because the clause could reasonably
be interpreted to exclude coverage only for environmental
pollution, and not damages due to routine commercial hazards.
Under Maine law, whether the language of an insurance
contract is ambiguous is a question of law for the court. See
Geyerhahn v. United States Fidelity and Guaranty Co., 724 A.2d
1258, 1261 (Me. 1999). Insurance contract language is ambiguous
"if it is reasonably susceptible of different interpretations." 
Cambridge Mut. Fire Ins. Co. v. Vallee, 687 A.2d 956, 957 (Me.
1996). Maine courts have also found policy language ambiguous "if
an ordinary person in the shoes of an insured would not understand
that the policy did not cover claims such as those brought." 
Peerless Ins. Co. v. Brennon, 564 A.2d 383 (Me. 1989). In applying
these rules of construction, the court should view the policy
language "from the perspective of an average person, untrained in
the law or the insurance field, in light of what a more than casual
reading of the policy would reveal to an ordinarily intelligent
insured." Peerless Ins. Co. v. Wood, 685 A.2d 1173, 1174 (Me.
1996).
We agree with the district court that the total pollution
exclusion clause is ambiguous as applied to the Varanos' claims
because an ordinarily intelligent insured could reasonably
interpret the pollution exclusion clause as applying only to
environmental pollution. Put another way, we agree that an
ordinary person in Jabar's shoes would not understand that the
policy did not cover personal injury claims like those asserted by
the Varanos.
First, the terms used in the exclusion clause, such as
"discharge," "dispersal," "release" and "escape," are terms of art
in environmental law and are generally used to refer to damage or
injury resulting from environmental pollution. See Atlantic Mut.
Ins. Co. v. McFadden, 595 N.E.2d 762, 764 (Mass. 1992) ("[T]he
terms used in the pollution exclusion 'discharge,' 'dispersal,'
'release,' and 'escape' are terms of art in environmental law which
generally are used with reference to damage or injury caused by
improper disposal or containment of hazardous waste."); West
American Ins. Co. v. Tufco Flooring East, Inc., 409 S.E.2D 692, 699
(N.C. Ct. App. 1991) (noting that the terms 'discharge' and
'release' are terms of art in environmental law). Given this
language, it is entirely reasonable that an ordinarily intelligent
insured would understand this provision to exclude coverage only
for injuries caused by traditional environmental pollution. As the
magistrate judge observed, an individual, like Jabar, engaged in a
business not known to present the risk of environmental pollution
"would not understand that the Nautilus policy exclude[d] coverage
for injuries arising from the use of products associated with that
business for the purpose for which those products [were] intended." 
Indeed, such an interpretation would render the Nautilus policy
virtually meaningless to Jabar. See Tufco, 409 S.E.2d at 697 ("To
allow West American to deny coverage for claims arising out of
Tufco's central business activity would render the policy virtually
useless to Tufco.").
We also find ambiguity in the exclusion's definition of
"pollutant." The Nautilus policy defines "pollutant" as "any
solid, liquid, gaseous, or thermal irritant or contaminant." As
other courts have observed, the terms "irritant" and "contaminant"
are virtually boundless, for "there is no substance or chemical in
existence that would not irritate or damage some person or
property." Pipefitters Welfare Educational Fund v. Westchester
Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir. 1992) (quoting
Westchester Fire Ins. Co. v. City of Pittsburgh, 768 F. Supp. 1463,
1470 (D. Kan. 1991)). A purely literal interpretation of this
language, without regard to the fact pattern alleged in the
underlying complaint, would surely stretch the intended meaning of
the policy exclusion. As one court has observed, "[w]ithout some
limiting principle, the pollution exclusion clause would extend far
beyond its intended scope, and lead to some absurd results." See
Pipefitters, 976 F.2d at 1043. Accordingly, we agree with those
courts which have restricted the exclusion's scope to only those
hazards traditionally associated with environmental pollution. 
See, e.g., Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47
F.3d 34, 38 (2d Cir. 1995) (the pollution exclusion clause can be
reasonably interpreted as applying only to environmental
pollution); Regional Bank of Colorado, N.A. v. St. Paul Fire &
Marine Ins. Co., 35 F.3d 494, 498 (10th Cir. 1994) ("It seems far
more reasonable that a policyholder would understand the exclusion
as being limited to irritants and contaminants commonly thought of
as [environmental] pollutants and not as applying to every possible
irritant or contaminant imaginable."); American Ins. Co. v. Koloms,
687 N.E.2d 72, 82 (Ill. 1997) ("we hold that the exclusion applies
only to those injuries caused by traditional environmental
pollution"); McFadden, 595 N.E.2d at 764 ("We conclude that an
insured could reasonably have understood the provision at issue to
exclude coverage for injury caused by certain forms of industrial
pollution, but not for coverage for injury allegedly caused by the
presence of lead materials in a private residence."); Tufco, 409
S.E.2d at 699 ("The historical purpose of the pollution exclusion
limits the scope of the exclusion to environmental damage.").
For the foregoing reasons, we conclude that the total
pollution exclusion clause in the Nautilus policy is ambiguous as
a matter of law as applied to the Varanos' claims. See Stoney Run,
47 F.3d at 37 (noting that an exclusionary clause can be ambiguous
in one context but not in another). It is a well-settled principle
of Maine law that if the language of an insurance policy is
ambiguous, it will be construed "against the insurer in favor of
coverage." Geyerhahn v. United States Fidelity & Guaranty Co., 724
A.2d 1258, 1261 (Me. 1999) (quoting Genthner v. Progressive Cas.
Ins. Co., 681 A.2d 479, 482 (Me. 1996)). We therefore construe the
total pollution exclusion clause against Nautilus, and in favor of
coverage. See id. CONCLUSION
For the reasons stated above, we affirm the district
court's grant of summary judgment in favor of defendant-appellee.