USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________No. 98-2158 NAUTILUS INSURANCE COMPANY, Plaintiff, Appellant, v. MICHAEL G. JABAR, d/b/a MIKE'S ROOFING CO., Defendant, Appellee. ____________________ LISA A. VARANO AND STEPHEN M. VARANO, Appellees. ____________________ STERN COMPANY, INC., Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Noonan and Lynch, Circuit Judges. _____________________ Kevin J. Beal, with whom Preti, Flaherty, Beliveau & Pachios,L.L.C. was on brief, for appellant. Laura A. Foggan, Daniel E. Troy and Wiley, Rein & Fielding onbrief for Insurance Environmental Litigation Association, amicuscuriae. Joseph M. Jabar, George M. Jabar II, and Daviau, Jabar &Batten on brief for appellee Michael Jabar d/b/a Mike's Roofing Co. Michael J. Donlan, with whom Gene R. Libby and Verrill & Dana,LLP were on brief, for appellees Lisa A. Varano and Stephen M.Varano. ____________________ August 30, 1999 ____________________ TORRUELLA, Chief Judge. Plaintiff-appellant NautilusInsurance Company ("Nautilus") appeals from the district court'sentry of summary judgment in favor of its insured, defendant-appellee Michael G. Jabar, d/b/a Mike's Roofing Company ("Jabar"). In the underlying action, Nautilus sought a declaratory judgmentfrom the district court that it was not obligated to defend and/orindemnify Jabar in connection with a civil action filed againstJabar by Lisa and Stephen Varano ("the Varanos"). The districtcourt granted summary judgment in favor of Jabar on the ground thatthe total pollution exclusion clause relied upon by Nautilus todeny coverage was ambiguous as a matter of law.  BACKGROUND On or about June 3, 1997, the Varanos commenced a civilaction against Jabar in the United States District Court for theDistrict of Maine alleging that in February and March of 1995 LisaVarano was exposed to hazardous fumes discharged by roofingproducts used by Jabar to repair the roof at Lisa Varano's place ofemployment. The complaint alleges that due to the inhalation ofthese fumes, Lisa Varano now suffers from occupational asthma. Intheir complaint, the Varanos sought damages to compensate them forLisa's personal injuries and for Stephen's loss of consortium. Thecomplaint does not allege, nor has Nautilus ever suggested, thatJabar in any way misused the roofing products that are alleged tohave caused Lisa Varano's injuries. At the time of Lisa's exposure to the fumes, Jabar wasinsured under a commercial lines insurance policy issued byNautilus. Jabar notified Nautilus of the suit against him, andNautilus undertook his defense, under a reservation of rights.  Eventually, Nautilus concluded that it was not obligatedto defend or indemnify Jabar in connection with the Varanos' claimsdue to the existence of a total pollution exclusion clause inJabar's policy. This clause excludes coverage for: (1) 'Bodily injury' or 'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. . . . . Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste . . . . On September 9, 1997, Nautilus instituted the underlyingdeclaratory judgment action seeking a declaration that the claimsasserted against Jabar fell unambiguously within the scope of thetotal pollution exclusion clause. On February 4, 1998, Nautilusmoved for summary judgment, asking the district court to rule, asa matter of law, that Nautilus was not obligated to defend orindemnify Jabar in connection with the Varanos' claims. Jabaropposed the motion, and at the same time requested that summaryjudgment be entered in his favor. By order dated April 29, 1998,the district court granted Nautilus's motion only as to any claimsfor indemnification for any award of punitive damages, and deniedit as to any claims for indemnification for any award ofcompensatory damages. On October 1, 1998, the district courtgranted summary judgment in favor of Jabar "on the same basis andreasoning as the decision granting in part and denying in part[Nautilus's] motion." This appeal followed. DISCUSSION We review the district court's grant of summary judgmentde novo. See Dominique v. Weld, 73 F.3d 1156, 1158 (1st Cir.1996). The sole issue on appeal is whether the Varanos' claimsfall unambiguously within the scope of the total pollutionexclusion clause contained in the Nautilus policy. Nautilus arguesthat the district court erred in concluding that the Varanos'claims did not fall clearly within the scope of the exclusionclause. Nautilus contends that there clearly was a "discharge,""dispersal," "release" or "escape" of toluene disocyanate ("TDI"),a "pollutant," which caused "bodily injury" in the form ofoccupational asthma to Lisa Varano. Jabar, on the other hand,contends that the district court correctly concluded that theexclusion clause is ambiguous because the clause could reasonablybe interpreted to exclude coverage only for environmentalpollution, and not damages due to routine commercial hazards. Under Maine law, whether the language of an insurancecontract is ambiguous is a question of law for the court. SeeGeyerhahn v. United States Fidelity and Guaranty Co., 724 A.2d1258, 1261 (Me. 1999). Insurance contract language is ambiguous"if it is reasonably susceptible of different interpretations." Cambridge Mut. Fire Ins. Co. v. Vallee, 687 A.2d 956, 957 (Me.1996). Maine courts have also found policy language ambiguous "ifan ordinary person in the shoes of an insured would not understandthat the policy did not cover claims such as those brought." Peerless Ins. Co. v. Brennon, 564 A.2d 383 (Me. 1989). In applyingthese rules of construction, the court should view the policylanguage "from the perspective of an average person, untrained inthe law or the insurance field, in light of what a more than casualreading of the policy would reveal to an ordinarily intelligentinsured." Peerless Ins. Co. v. Wood, 685 A.2d 1173, 1174 (Me.1996). We agree with the district court that the total pollutionexclusion clause is ambiguous as applied to the Varanos' claimsbecause an ordinarily intelligent insured could reasonablyinterpret the pollution exclusion clause as applying only toenvironmental pollution. Put another way, we agree that anordinary person in Jabar's shoes would not understand that thepolicy did not cover personal injury claims like those asserted bythe Varanos. First, the terms used in the exclusion clause, such as"discharge," "dispersal," "release" and "escape," are terms of artin environmental law and are generally used to refer to damage orinjury resulting from environmental pollution. See Atlantic Mut.Ins. Co. v. McFadden, 595 N.E.2d 762, 764 (Mass. 1992) ("[T]heterms used in the pollution exclusion 'discharge,' 'dispersal,''release,' and 'escape' are terms of art in environmental law whichgenerally are used with reference to damage or injury caused byimproper disposal or containment of hazardous waste."); WestAmerican Ins. Co. v. Tufco Flooring East, Inc., 409 S.E.2D 692, 699(N.C. Ct. App. 1991) (noting that the terms 'discharge' and'release' are terms of art in environmental law). Given thislanguage, it is entirely reasonable that an ordinarily intelligentinsured would understand this provision to exclude coverage onlyfor injuries caused by traditional environmental pollution. As themagistrate judge observed, an individual, like Jabar, engaged in abusiness not known to present the risk of environmental pollution"would not understand that the Nautilus policy exclude[d] coveragefor injuries arising from the use of products associated with thatbusiness for the purpose for which those products [were] intended." Indeed, such an interpretation would render the Nautilus policyvirtually meaningless to Jabar. See Tufco, 409 S.E.2d at 697 ("Toallow West American to deny coverage for claims arising out ofTufco's central business activity would render the policy virtuallyuseless to Tufco."). We also find ambiguity in the exclusion's definition of"pollutant." The Nautilus policy defines "pollutant" as "anysolid, liquid, gaseous, or thermal irritant or contaminant." Asother courts have observed, the terms "irritant" and "contaminant"are virtually boundless, for "there is no substance or chemical inexistence that would not irritate or damage some person orproperty." Pipefitters Welfare Educational Fund v. WestchesterFire Ins. Co., 976 F.2d 1037, 1043 (7th Cir. 1992) (quotingWestchester Fire Ins. Co. v. City of Pittsburgh, 768 F. Supp. 1463,1470 (D. Kan. 1991)). A purely literal interpretation of thislanguage, without regard to the fact pattern alleged in theunderlying complaint, would surely stretch the intended meaning ofthe policy exclusion. As one court has observed, "[w]ithout somelimiting principle, the pollution exclusion clause would extend farbeyond its intended scope, and lead to some absurd results." SeePipefitters, 976 F.2d at 1043. Accordingly, we agree with thosecourts which have restricted the exclusion's scope to only thosehazards traditionally associated with environmental pollution. See, e.g., Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47F.3d 34, 38 (2d Cir. 1995) (the pollution exclusion clause can bereasonably interpreted as applying only to environmentalpollution); Regional Bank of Colorado, N.A. v. St. Paul Fire &Marine Ins. Co., 35 F.3d 494, 498 (10th Cir. 1994) ("It seems farmore reasonable that a policyholder would understand the exclusionas being limited to irritants and contaminants commonly thought ofas [environmental] pollutants and not as applying to every possibleirritant or contaminant imaginable."); American Ins. Co. v. Koloms,687 N.E.2d 72, 82 (Ill. 1997) ("we hold that the exclusion appliesonly to those injuries caused by traditional environmentalpollution"); McFadden, 595 N.E.2d at 764 ("We conclude that aninsured could reasonably have understood the provision at issue toexclude coverage for injury caused by certain forms of industrialpollution, but not for coverage for injury allegedly caused by thepresence of lead materials in a private residence."); Tufco, 409S.E.2d at 699 ("The historical purpose of the pollution exclusionlimits the scope of the exclusion to environmental damage."). For the foregoing reasons, we conclude that the totalpollution exclusion clause in the Nautilus policy is ambiguous asa matter of law as applied to the Varanos' claims. See Stoney Run,47 F.3d at 37 (noting that an exclusionary clause can be ambiguousin one context but not in another). It is a well-settled principleof Maine law that if the language of an insurance policy isambiguous, it will be construed "against the insurer in favor ofcoverage." Geyerhahn v. United States Fidelity & Guaranty Co., 724A.2d 1258, 1261 (Me. 1999) (quoting Genthner v. Progressive Cas.Ins. Co., 681 A.2d 479, 482 (Me. 1996)). We therefore construe thetotal pollution exclusion clause against Nautilus, and in favor ofcoverage. See id. CONCLUSION For the reasons stated above, we affirm the districtcourt's grant of summary judgment in favor of defendant-appellee.