Phillip McMICHAEL, Plaintiff–
Appellant,

v.

AETNA INSURANCE COMPANY,
Defendant–Appellee.

No. 92CA2098.

Colorado Court of Appeals,
Div. V.

Jan. 27, 1994.

Rehearing Denied March 24, 1994.

Certiorari Granted Aug. 8, 1994.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Joyce Ann Dunning, Colorado Springs, for plaintiff-appellant.

Long & Jaudon, P.C., Lee A. Lindsay, Denver, for defendant-appellee.

Opinion by Judge BRIGGS.

Plaintiff, Phillip McMichael, appeals the summary judgment entered in favor of defendant, Aetna Insurance Company. Plaintiff contends that he is entitled to recovery under the uninsured motorist provision of an insurance policy provided to his employer by defendant. We reverse and remand with directions.

Plaintiff was employed by a company engaged in the construction and repair of highways. The employer provided its employees with trucks, each specially designed with an overhead beacon and emergency flashing lights. The trucks carried tools, together with special barricades and cones to alert and direct the flow of traffic during road construction or repair.

In early 1990, plaintiff parked the truck provided by the employer in the center median of a highway. He turned on the overhead beacon and emergency flashers, removed a cement saw from the truck, and began to cut a concrete joint in the road directly in front of the truck. A vehicle with windows frosted over left the roadway and struck plaintiff.

After receiving payment of policy limits from the insurer of the motorist who had injured him, plaintiff filed a claim against defendant under the uninsured and underinsured motorist (UM/UIM) provision of his employer's insurance policy.

The employer's UM/UIM coverage provided that the insurer would pay all sums an "insured" was legally entitled to recover as compensatory damages from the owner or driver of an uninsured or underinsured motor vehicle. "Insured" was defined to include the "named insured" and anyone else "occupying" a covered auto.

Plaintiff was denied coverage because he was not occupying the insured truck at the time of the accident. As a result, he filed this action for declaratory relief.

The trial court found the terms of the UM/UIM coverage unambiguous. It concluded that, even though plaintiff had permission to use the employer's vehicle, plaintiff was neither a "named insured" nor "occupying" the vehicle at the time he was injured and that, therefore, he was not covered under the UM/UIM provision.

### I.

█ Plaintiff contends that, because defendant's policy extends liability coverage to anyone using a covered auto with the permission of the named insured, but excludes from UM/UIM anyone using but not "occupying"

the vehicle at the time of the accident, it violates public policy. We agree.

In 1979, the General Assembly enacted § 10–4–609, C.R.S. (1993 Cum.Supp.), which reads in pertinent part:

(1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ...; except that the named insured may reject such coverage in writing.

In construing a similar statute the Minnesota Supreme Court observed: "The vexing problem with this broad statutory language is that the class of persons to be protected by mandatory uninsured motorist coverage is not clearly defined." *Kaysen v. Federal Insurance Co.*, 268 N.W.2d 920, 924 (Minn. 1978). It provided the following analysis in determining that class:

By requiring that every [insurance policy] issued in Minnesota include uninsured motorist coverage, the legislature no doubt intended that the scope of this important remedial measure be coextensive with the other coverage afforded in each [insurance policy]. If insurers are allowed to designate a separate and smaller category of persons insured under uninsured motorist coverage, then the broad-based protection which the legislature intended to require could be contractually restricted at the whim of insurers. For this reason, we conclude that the most sensible reading of the phrase 'persons insured thereunder' requires that uninsured motorist coverage be extended to all persons insured under any [liability insurance policy].

Coverage for liability typically extends to permissive users. Courts in other states have therefore "been consistent in extending the coverage under the [uninsured motorist] endorsement to permissive users." 2 M. Bender, *No–Fault & Uninsured Motorist*

*Automobile Insurance* § 24.10[3] at 24–35 (1986); *see* 2 I. Schermer, *Automobile Liability Insurance: No–Fault Insurance, Uninsured Motorists, & Compulsory Coverage* § 27.05 at 27–21 (2d ed. 1992 rev.) ("[E]ven though the UM policy may limit coverage in the case of a second category insured under uninsured motorist to 'any other person *occupying* an insured vehicle,' a claimant may be away from the vehicle at the time of the accident and still qualify for uninsured motorist coverage if his activity was linked to the vehicle's use."); *Oberkramer v. Reliance Insurance Co.*, 650 S.W.2d 300 (Mo.App.1983) (failure to provide uninsured motorist coverage to users who are not occupiers is contrary to statute and against public policy); *Rau v. Liberty Mutual Insurance Co.*, 21 Wash.App. 326, 585 P.2d 157, 159 (1978) (statutory uninsured motorist coverage "vitiates any attempt to make the meaning of insured for purposes of uninsured motorist coverage narrower than the meaning of that term under the primary liability section of the policy."); *see also* 2 I. Schermer, *Automobile Liability Insurance: No–Fault Insurance, Uninsured Motorists, & Compulsory Coverage, supra,* § 23.02 at 23–4 ("A policy which fails to conform with the statute will be deemed to do so.").

The declared purpose of the Colorado Auto Accident Reparations Act is to avoid inadequate compensation to victims of automobile accidents. Section 10–4–702, C.R.S. (1987 Repl.Vol. 4A); *see Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo.1984). The "clear purpose" of imposing on the insurer a duty under the Act to offer UM/UIM coverage is "to protect the insured against the risk of inadequate compensation resulting from injuries and damages incurred in an automobile accident with an uninsured or underinsured motorist." *Allstate Insurance Co. v. Parfrey,* 830 P.2d 905, 911 (Colo.1992).

Our supreme court in *Allstate* concluded there is a private civil remedy to redress damages caused by an insurer's failure to inform an insured of the right to purchase UM/UIM coverage at a level higher than the required minimum bodily injury liability coverage. It reasoned that imposing such a duty was consistent with the legislative pur-

pose underlying UM/UIM coverage. "[T]o foreclose the insured's right to relief for failure to provide this coverage, would, in all practicality, circumvent this statutorily imposed duty." *Allstate Insurance Co. v. Parfrey, supra,* at 911.

We are likewise persuaded that to construe § 10–4–609 as permitting an insurer to provide UM/UIM coverage to a class more narrow than that receiving liability coverage would frustrate public policy. *See Oberkramer v. Reliance Insurance Co., supra; Rau v. Liberty Mutual Insurance Co., supra; cf. Nationwide Mutual Insurance Co. v. Hillyer,* 32 Colo.App. 163, 509 P.2d 810 (1973) (insurance policy cannot vary the requirements of uninsured motorist statute or change the public policy of this state as determined by the General Assembly).

■ We recognize that § 10–4–609 expressly permits "the named insured" to reject UM/UIM coverage in writing. However, none of those listed as named insureds on the policy in question rejected UM/UIM coverage.

Defendant's counsel at oral argument contended that it was possible to purchase additional insurance to cover the employees as named insureds, which would result in their having coverage as pedestrians. The argument apparently is that it was therefore possible to obtain coverage equivalent to the mandatory UM/UIM coverage. The employer chose not to do so, and thus, at least partially rejected UM/UIM coverage.

Even if we were to assume that a named insured could partially reject UM/UIM coverage, and could do so for others than that named insured, defendant was required to make an affirmative offer of coverage "in a manner reasonably calculated to permit the potential purchaser to make an informed decision on whether to purchase UM/UIM coverage" for a class as extensive as the class included within liability coverage. *See Allstate Insurance Co. v. Parfrey, supra,* 830 P.2d at 913. And, the insured must have taken affirmative action to disavow such coverage by rejecting it in writing.

Here, there is no evidence of such an affirmative offer. Further, the requirement that rejection be in writing was not satisfied.

■ We also reject defendant's contention that an exception should be made for injuries to employees because of the availability of workers' compensation benefits. Those benefits do not include all the elements of damages recoverable under UM/UIM coverage. *See Martinez v. St. Joseph Hospital,* 878 P.2d 13 (Colo.App.1993).

Furthermore, an uninsured motorist carrier is not a third-party tortfeasor within the purview of § 8–41–203, C.R.S. (1993 Cum. Supp.). Because recovery under UM/UIM coverage is based on the automobile insurer's contractual obligation and the State Compensation Insurance Fund does not become a third-party beneficiary of the insurance contract, an employee is entitled to recover both workers' compensation benefits and benefits under UM/UIM coverage. *State Compensation Insurance Fund v. Commercial Union Insurance Co.,* 631 P.2d 1168 (Colo.App. 1981).

Here, liability coverage was extended to anyone using an insured vehicle with the permission of the named insured. It is uncontested that plaintiff had permission to use the vehicle in question. We therefore conclude that plaintiff was an insured entitled to UM/UIM coverage to the extent that his injuries arose out of the "use" of the truck.

## II.

■ An accident occurs on account of the "use" of a motor vehicle, for purposes of defining the minimum level of coverage required under § 42–7–413(1)(c), C.R.S. (1993 Repl.Vol. 17), if the injury that forms the basis of the claim is causally related to a conceivable use of the insured vehicle that is not foreign to its inherent purpose. While the claimant must establish that the accident would not have occurred but for the vehicle's use, it is not necessary to establish that the vehicle was moving or that the vehicle was the sole cause of the accident. It is sufficient to demonstrate that the injury originated in, grew out of, or flowed from the use of the vehicle. *Kohl v. Union Insurance Co.,* 731 P.2d 134 (Colo.1986); *see also Azar v. Employers Casualty Co.,* 178 Colo. 58, 495 P.2d 554 (1972).

■ The salient facts are undisputed. The truck in question was equipped with emergency flashers and lights to alert oncoming traffic of road work in progress when the truck was parked. These warning devices were activated at the time of the accident. The truck commonly functioned as a barricade to protect employees while they worked on a roadway. Plaintiff was directly in front of and using the truck for warning and protection at the time of the accident.

Under these circumstances, plaintiff's injuries arose out of the use of the truck. *See Great American Insurance Co. v. Cassell,* 239 Va. 421, 389 S.E.2d 476 (1990) (injuries sustained by a firefighter struck by a vehicle while writing a report 20 to 25 feet from fire truck arose out of use of fire truck); *Oberkramer v. Reliance Insurance Co., supra,* (injuries sustained by a police officer struck by a vehicle while positioned 25 to 50 feet from his police car, which was being used as a barricade, arose out of use of police car); *see also Kohl v. Union Insurance Co., supra* (injuries resulting from accidental discharge of rifle being removed from gun rack in vehicle arose out of use of vehicle); *Trinity Universal Insurance Co. v. Hall, supra* (injuries sustained while buying refreshments from a truck when a collapsible side awning fell arose out of use of vehicle); *cf. Cung La v. State Farm Automobile Insurance Co.,* 830 P.2d 1007 (Colo.1992); *see generally* 2 I. Schermer, *Automobile Liability Insurance: No–Fault Insurance, Uninsured Motorists, & Compulsory Coverage, supra,* at § 27.05. Thus, because the use was permissive, plaintiff was an "insured" for purposes of the UM/UIM coverage of the employer's automobile insurance policy.

Plaintiff also contends that the policy should be construed as including him as a "named insured" because he was an employee of a corporation which was a named insured. Because of our holding that plaintiff's injuries arose out of the use of the vehicle, it is unnecessary to address this issue.

The judgment is reversed, and the cause is remanded with directions to enter judgment declaring plaintiff to be within the scope of the UM/UIM coverage of the policy at issue.

MARQUEZ and DAVIDSON, JJ., concur.