494 S.E.2d 915

**Gary ADKINS and Shirley Adkins, Plaintiffs Below, Appellees,**

**v.**

**Anna Lee MEADOR, Defendant Below.**

**Liberty Mutual Fire Insurance Company, Appellant.**

**No. 23371.**

Supreme Court of Appeals of West Virginia.

Submitted March 25, 1997.

Decided July 15, 1997.

Cynthia Morrone Salmons, J. Michael Ranson, Ranson Law Offices, Charleston, for Appellees, Gary Adkins and Shirley Adkins.

R. Carter Elkins, Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for Appellant, Liberty Mutual Fire Insurance Company.

STARCHER, Justice.

This declaratory judgment action arises from the interpretation of an underinsured motorist policy purchased by an employer. A construction worker was seriously injured when he was struck by a vehicle during the course of his job repairing an interstate highway. The construction worker filed a personal injury action against the vehicle's driver and notified his employer's underinsured motorist insurer of the action. The insurer filed a counterclaim and declaratory judgment action to declare that the worker could not recover underinsurance benefits from his employer's underinsurance policy because the worker was not "occupying" the insured vehicle at the time of the accident.

Both parties filed motions for summary judgment on the insurance coverage issue. The circuit court concluded that the worker was an insured under his employer's underinsured motorist insurance policy and granted him summary judgment.

On appeal by the insurer, we find that the "occupying" restriction contained in the underinsurance policy fails to provide the coverage required by West Virginia law, and is therefore void. Under West Virginia law, a worker is covered by an employer's underinsured motorist insurance policy if the worker is "using" the employer's vehicle at the time of injury. The record in this case suggests the worker was "using" his employer's insured vehicle at the time of the accident. However, because the facts are unclear, we are compelled to reverse the circuit court's summary judgment order because it is insufficient and remand the case for reconsideration.

I.

*Factual Background and Proceedings*

Appellee Gary Adkins was employed by Champagne–Webber, Inc., a company that engaged in road construction on Interstate 79. On July 30, 1993, Mr. Adkins was positioning barrels along the interstate to direct traffic flow. The appellee had traveled to the site driving a pick-up truck owned by Champagne–Webber; it is unclear where the truck was parked, how long the appellee was outside his vehicle, and what other uses the appellee had for the truck. What is clear is that a vehicle driven by Anna Lee Meador [1] struck Mr. Adkins, causing Mr. Adkins the loss of a leg and the loss of sexual function.

Because Mr. Adkins was injured in the course of and as a result of his employment, he received workers' compensation medical benefits in excess of $130,000. [2] Additionally, Mr. Adkins settled with Ms. Meador's insurer and received $100,000, the limits of her automobile liability insurance coverage. [3] Mr. Adkins sought coverage from Champagne–Webber's commercial automobile insurance, particularly its underinsured motorist coverage through appellant Liberty Mutual Insurance Company. The employer's pickup truck was a covered vehicle under the policy.

On September 9, 1994, the appellees filed a personal injury action against Ms. Meador and served Liberty Mutual with the com-

---

1. Ms. Meador is not a party to the instant appeal.

2. Mr. Adkins indicates in his appellate brief that he has reimbursed the West Virginia Workers' Compensation Fund for those medical expenses expended on his behalf by the Fund, as required by *W.Va.Code*, 23–2A–1 [1990].

3. Mr. Adkins also negotiated settlements with the insurers of his own vehicles. The appellant received $300,000 in underinsured motorist benefits from insurance policies covering his own automobiles, and $20,000 in underinsured motorist coverage from a motorcycle policy issued to him. He also received $50,000 in medical payments, $5,000 in death and dismemberment benefits, and $7,350 in loss of earning benefits.

plaint.[4] Liberty Mutual answered the complaint and filed a counterclaim seeking a declaration that Mr. Adkins was not an insured under the underinsured motorist policy issued to Champagne–Webber, Inc. After conducting discovery, the parties filed cross-motions for summary judgment.

On December 26, 1995, the circuit court entered a brief order granting the appellees' motion for summary judgment and denying Liberty Mutual's motion, thereby holding that Mr. Adkins was an insured under his employer's underinsured motorist insurance policy.[5] Liberty Mutual now appeals the circuit court's order.

## II.

### Standard of Review

■ The focus of this appeal is the appropriateness of summary judgment under *W.Va.R.Civ.P.* Rule 56 [1978]. We review a circuit court's entry of summary judgment *de novo.* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). The traditional standard for granting summary judgment was established in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963) where we held:

4. When an uninsured or underinsured defendant motorist is sued, West Virginia law requires an insured plaintiff intending to rely upon uninsured or underinsured motorist insurance coverage to serve a copy of the summons and complaint upon the insurance company providing the coverage sought as though the insurance company were a named party defendant. The insurance company then may file pleadings and take any action in the name of the uninsured or underinsured defendant. *See W.Va.Code,* 33-6-31(d) [1995]. However, the insurance carrier, if it so chooses, is entitled to appear and defend in its own name. Syllabus Point 4, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Canady,* 197 W.Va. 107, 475 S.E.2d 107 (1996).

5. The circuit court's complete order states:

This day came the parties, by counsel, pursuant to Liberty Mutual's Motion for Summary Judgment and Plaintiffs' Cross Motion for Summary Judgment. After reviewing the record in this matter, the memoranda filed by the parties and after hearing the arguments of counsel, the Court finds that Gary Adkins is an

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law. *In accord,* Syllabus Point 1, *Fayette Co. National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997); Syllabus Point 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995); Syllabus Point 2, *Painter, supra;* Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

■ A circuit court's entry of a declaratory judgment is also reviewed *de novo,* since the principal purpose of a declaratory judgment action is to resolve legal questions. Syllabus Point 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995). When a declaratory judgment proceeding involves the determination of an issue of fact, that issue may be tried and determined by a judge or jury in the same manner as issues of fact are tried and determined in other civil actions. *W.Va. Code,* 55-13-9 [1941]. Any determinations of fact made by the circuit court or jury in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard. *Cox,* 195 W.Va. at 612, 466 S.E.2d at 463.

We reiterated in *Fayette Co. National Bank, supra,* the requirement that "an order

insured within the meaning of the insurance policy issued by Liberty Mutual Insurance Company to Champagne–Webber, Inc., the employer of Gary Adkins. It is therefore ORDERED that Liberty Mutual's Motion for Summary Judgment be and the same is, hereby DENIED. It is further ORDERED that plaintiff Gary Adkins' Motion for Summary Judgment be, and the same is, hereby GRANTED to the extent that this Court finds that Gary Adkins was an insured under the policy issued by Liberty Mutual Insurance Company to Champagne–Webber, Inc.

The Court notes the objection and exception of Liberty Mutual to this ruling.

The Court hereby CERTIFIES, pursuant to Rule of Civil Procedure 54(b) that its ruling this day made is dispositive of the issue of plaintiff's status under the insurance policy at issue herein and therefore the plaintiff Gary Adkins may have judgment on his claim of insured status against Liberty Mutual Insurance Company, as contained within Liberty Mutual Insurance Company's Counterclaim for Declaratory Judgment against Gary Adkins.

Entered this 22nd day of December, 1995.

granting summary judgment cannot merely recite and rest exclusively upon a conclusion that, 'No genuine issue of material fact is in dispute and therefore summary judgment is granted.'" 199 W.Va. at 353, 484 S.E.2d at 236. In order to properly evaluate a circuit court's order granting summary judgment, this Court must be able to "determine whether the stated reasons for the granting of summary judgment by the lower court are supported by the record." *Id.* For us to accomplish this, it is mandatory that a circuit court identify the factual and legal support for its ultimate conclusions. We therefore held that:

> Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

Syllabus Point 3, *Fayette County National Bank.* With these standards in mind, we review the circuit court's order.

### III.

#### Discussion

Mr. Adkins contends that he is an insured under his employer's Liberty Mutual underinsured motorist endorsement, and therefore, he must be afforded underinsured motorist coverage which is provided for in *W.Va.Code,* 33–6–31(b) [1995].[6] Liberty Mutual's underinsured motorist coverage endorsement states that Liberty Mutual "will pay all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an ... underinsured motor vehicle.

The damages must result from bodily injury sustained by the insured or property damage caused by the accident."

■ *W.Va.Code,* 33–6–31(c) [1995][7] defines the individuals who must be covered by an underinsured motorist policy:

> [T]he term "named insured" shall mean the person named as such in the declarations of the policy or contract and shall also include such person's spouse if a resident of the same household and the term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, *and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies* or the personal representative of any of the above; ... [emphasis added.]

Liberty Mutual contends that Mr. Adkins is not an "insured" under the policy issued to Champagne–Webber. The Liberty Mutual policy defines "insured" in following manner:

**B. WHO IS AN INSURED**

1. You.

2. If you are an individual, any family member.

3. Anyone else occupying a covered auto ...

4. Anyone for damages he is entitled to recover because of bodily injury sustained by another insured.

The policy provides that "[t]hroughout this policy the words you and your refer to the Named Insured shown in the Declarations." Champagne–Webber, Inc., is listed as the named insured on the declarations page.

---

**6.** Underinsured motorist coverage is optional under *W.Va.Code,* 33–6–31(b). However, insurance companies must offer coverage against underinsured motor vehicles in an amount not less than the limit of liability coverage purchased by the insured.

> "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been

reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

*W.Va.Code,* 33–6–31(b) [1995].

**7.** *W.Va.Code,* 33–6–31 was amended in 1995; however, the amendments do not affect our discussion in this opinion.

The term "occupying" is defined by the policy as "mean[ing] in, upon, getting in, on, out or off."

Appellee Liberty Mutual argues that Mr. Adkins is not insured because he is not a "you" under the policy because he is not Champagne–Webber, Inc.; is not a "family member" of Champagne–Webber; was not "occupying" his employer's truck at the time of the accident because he was not "in, upon, getting in, on, out or off" the pickup truck; and was not entitled to recover damages because of a bodily injury sustained by another insured. Liberty Mutual contends that its policy language "mirrors that found in West Virginia Code § 33–6–31(c)," is unambiguous, and therefore must be enforced against Mr. Adkins. We disagree.

■ In construing any insurance policy, it is appropriate to begin by considering whether the policy language is in accord with West Virginia law. The terms of the policy should be construed in light of the language, purpose and intent of the applicable statute. We have previously said that:

Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.

Syllabus Point 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989). Provisions in an insurance policy that are more restrictive than statutory requirements are void and ineffective as against public policy. *See* Syllabus Point 2, *Universal Underwriters Ins. Co. v. Taylor*, 185 W.Va. 606, 408 S.E.2d 358 (1991); Syllabus Point 1, *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974); Syllabus Point 2, *Johnson v. Continental Casualty Co.*, 157 W.Va. 572, 201 S.E.2d 292 (1973).

■ When the language of an insurance policy is contrary to statute and therefore void, the policy should be construed to contain the coverage required by West Virginia law. *W.Va.Code*, 33–6–17 [1957] mandates that:

Any insurance policy, rider, or endorsement hereafter issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this chapter, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this chapter.

■ The underinsured motorist statute is remedial and it should be liberally construed. "[T]he preeminent public policy of this state in uninsured and underinsured motorist cases is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured or underinsured motorist coverage." *State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990). Accordingly, if the language of Liberty Mutual's policy does not comply with the broad terms of *W.Va.Code*, 33–6–31, then the policy language is void and the policy must be construed to contain the coverage provided for by statute.

The *West Virginia Code* defines an insured as "any person ... who *uses*, with the consent, express or implied, of the named insured, the motor vehicle to which the policy applies...." *W.Va.Code*, 33–6–31(c) (emphasis added). The term "use" is widely recognized to mean more than driving, or being driven in, a motor vehicle. One commentator has stated that "[o]ne may use an automobile without personally operating it, as the term use is broader than operating," 6C John A. Appleman and Jean Appleman, *Insurance Law and Practice*, § 4354 (Richard B. Buckley, ed.1979).

In *Baber v. Fortner by Poe*, 186 W.Va. 413, 412 S.E.2d 814 (1991), we examined the term "use" in the context of an intentional acts exclusion which required that an injury arise from the "ownership, maintenance and use" of a vehicle. We turned for guidance to the Michigan Court of Appeal's decision in *Detroit Auto. Inter–Insurance Exchange v. Higginbotham*, 95 Mich.App. 213, 290 N.W.2d 414 (1980),

Cases construing the phrase "arising out of the ... use of a motor vehicle" uniformly

require that the injured person establish a causal connection between the use of the motor vehicle and the injury. (Citation omitted.) *Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle.* (Citations omitted.) (Emphasis added.)

*Baber,* 186 W.Va. at 417, 412 S.E.2d at 818 (*quoting Higginbotham,* 95 Mich.App. at 222, 290 N.W.2d at 419).

We reviewed a policy restriction nearly identical to that found in Liberty Mutual's policy in *Trent v. Cook,* 198 W.Va. 601, 482 S.E.2d 218 (1996). In *Trent,* a sheriff's deputy was investigating a one-vehicle accident. The deputy's police cruiser was parked on the side of the road, and the deputy was standing more than thirty feet from his vehicle preparing an accident report when he was struck and injured by the underinsured defendant. The deputy settled with the defendant for the limits of her insurance coverage, and then sought coverage from the underinsurance carrier for the Sheriff's Department and the State of West Virginia.

The policy language in *Trent* provided underinsured motorist coverage for "Anyone else 'occupying' a covered 'auto'...." The policy defined "occupying" as "in, upon, getting in, on, out or off" of the covered vehicle. 198 W.Va. at 605, 482 S.E.2d at 222. As with appellee Adkins, it was undisputed that Deputy Trent was not inside his vehicle at the time of the accident.

We compared the policy language with the *West Virginia Code* and concluded that the language did not meet statutory requirements. We found that "it is apparent that the term 'uses' as it is employed in West Virginia Code § 33–6–31 is less restrictive than the term 'occupying' as it is defined within the insurance policy at issue." 198 W.Va. at 606, 482 S.E.2d at 223. However, we went on to conclude that the policy restriction was valid because the provisions of *W.Va.Code,* 33–6–31 are not binding upon the State. Accordingly, the State and Sheriff's

Department could purchase an insurance policy with liability limiting language at variance with the law if they so chose. Syllabus Point 1, *Trent, supra.*

The policy at question in this case is one between private individuals. There is no involvement by the State; accordingly, the policy language must conform with the law, and *W.Va.Code,* 33–6–31(c) requires underinsurance coverage for any individual who "uses" the covered vehicle.

■ "Use" of a vehicle means to "put into action or service," "to carry out a purpose or action by means of," or "[to] make instrumental to an end or process." *Nationwide Mut. Ins. Co. v. Davis,* 118 N.C.App. 494, 497, 455 S.E.2d 892, 894 (1995); *Webster's Third New International Dictionary* [1976]. " '[U]se' of an automobile by an individual involves its employment for some purpose or object of the user...." *State Farm Mutual Automobile Ins. Co. v. Allstate Ins. Co.,* 154 W.Va. 448, 452, 175 S.E.2d 478, 480 (1970) (*quoting Maryland Cas. Co. v. Marshbank,* 226 F.2d 637, 639 (3d Cir.1955)). However, "exact definition of the term 'use' is elusive, and is not capable of a definition which will leave everyone 'comfortable.' Whether or not an injury arose from the 'use' of a motor vehicle within the contemplation of a liability policy or statute depends upon the factual context of each case." *Federated Mut. Implement & Hardware Ins. Co. v. Gupton,* 241 F.Supp. 509, 511 (E.D.S.C.1965), *aff'd,* 357 F.2d 155 (4th Cir.1966).

The employment of the broad term "uses" in *W.Va.Code,* 33–6–31(c), instead of the limited term "occupying," is a policy choice well-grounded in reality. Many motor vehicles are used for tasks beyond transporting the owner or driver, and coverage is provided through *W.Va.Code,* 33–6–31(c) for persons involved with the reasonable use of those vehicles. For example, police cruisers not only transport police officers, but they are used for protection, communication, traffic control, or as a mobile office;[8] fire trucks

---

8. *See Maring v. Hartford Casualty Ins. Co.,* 126 N.C.App. 201, 484 S.E.2d 417 (1997) (police officer was insured under uninsured motorist policy on police cruiser when hit by uninsured motorist

while directing traffic at intersection with malfunctioning traffic lights; court held "occupying" language in the policy was contrary to North Carolina law, which requires coverage for per-

not only transport firemen, they carry equipment to put out fires;[9] ambulances not only haul paramedics, but carry patients and the equipment used to save their lives;[10] garbage trucks not only transport sanitation workers, but they are used by the workers to collect, haul and dump garbage;[11] tractor-trailers not only haul their drivers, but are used to deliver goods;[12] and school buses carry young children to and from school in addition to carrying the county employees that drive the buses.[13]

A schedule attached to Champagne–Webber's automobile insurance policy lists the vehicles covered, including numerous dump trucks, pickup trucks, tractor-trailer rigs, and other construction vehicles. However, the policy also covers several passenger cars such as two Lincoln Town Cars, a Lincoln Continental, and a Mercedes–Benz 560. The drivers and passengers of these and other similar vehicles are also afforded coverage under *W.Va.Code*, 33–6–31(c) for foreseeable injuries incurred through their normal use.[14]

sons "using" covered vehicles); *Trent v. Cook, supra; Oberkramer v. Reliance Ins. Co.,* 650 S.W.2d 300 (Mo.App.1983) (coverage provided for police officer who used police cruiser to create a road block, and who was 25–50 feet from vehicle when he was struck and killed by a vehicle pursued by other officers)

**9.** *See, Great American Ins. Co. v. Cassell,* 239 Va. 421, 389 S.E.2d 476 (1990) (coverage provided when firefighter, while using equipment from his fire truck to investigate vehicle fire, was struck by uninsured vehicle twenty to twenty-five feet from fire truck).

**10.** *See, National Union Fire Ins. Co. of Pittsburgh, Pa. v. Olson,* 69 Haw. 559, 751 P.2d 666 (1988) (coverage provided for emergency medical technician who was struck by uninsured motorist while placing flares to warn of accident scene). *See also, Owens v. Ocean Acc. & Guarantee Corp.,* 194 Ark. 817, 822, 109 S.W.2d 928, 930 (1937) (patient who fell off ambulance stretcher some distance from ambulance covered by ambulance liability policy because transfer by stretcher "was an essential transaction in connection with use of the automobile as an ambulance.").

**11.** *See, Hartford Acc. & Indem. Co. v. Booker,* 140 Ga.App. 3, 230 S.E.2d 70 (1976) (sanitation worker struck by a car as he was walking alongside was "using" the garbage truck).

**12.** *See, Radmann v. Truck Insurance Exchange,* 660 So.2d 975 (Miss.1995) (truck driver who exited vehicle in parking lot and was struck by uninsured motorist while walking across highway was "vehicle oriented" and therefore covered by policy); *First Sec. Bank of Searcy v. Doe,* 297 Ark. 254, 760 S.W.2d 863 (1988) (driver of tractor-trailer rig killed by hit-and-run driver was using rig while standing on street directing backing of truck, six-to-eight feet from insured truck); *Rau v. Liberty Mut. Ins. Co.,* 21 Wash.App. 326, 585 P.2d 157 (1978)(coverage provided for truck driver injured while returning to his truck after asking for directions about where to make a delivery). *See also Oklahoma Farm Bureau Mut. Ins. Co. v. Mouse,* 268 P.2d 886 (Okla.1953) (driver who fell from his truck while adjusting

cargo suffered injuries as a result of "ownership, maintenance or use" of the truck).

**13.** *See, Westerfield v. LaFleur,* 493 So.2d 600 (La.1986) (minor child struck and killed by underinsured motorist as she crossed the highway to board school bus was "occupying" bus and was therefore covered by school bus insurance policy).

**14.** *See, e.g., Genthner v. Progressive Cas. Ins. Co.,* 681 A.2d 479 (Me.1996) (insured vehicle was damaged by unidentified truck; passenger exited vehicle and was run over by truck while walking towards truck to get license plate number); *Nationwide Mut. Ins. Co. v. Davis,* 118 N.C.App. 494, 455 S.E.2d 892 (1995) (vehicle was "used" when insured parked the vehicle across the street from supermarket, got out of vehicle and began walking across the street and was struck by car); *Gentry v. Allstate Ins. Co.,* 208 Mich. App. 109, 527 N.W.2d 39 (1994) (passengers of vehicle that swerved into a ditch were using vehicle when they were struck by an uninsured motorist as they stood on the side of the road waiting for vehicle to be towed); *Leonard v. North Carolina Farm Bureau Mut. Ins. Co.,* 104 N.C.App. 665, 411 S.E.2d 178 (1991), *rev'd on other grounds,* 332 N.C. 656, 423 S.E.2d 71 (1992) (vehicle was being "used" when the insured was injured while changing a tire); *White v. Williams,* 563 So.2d 1316 (La.App.1990) (passenger was using vehicle when he was struck by an uninsured motorist six or seven feet from the insured car after he had paid for gasoline and was returning to the car); *Klein v. United States Fidelity and Guaranty Co.,* 451 N.W.2d 901 (Minn.App.1990) (driver who got out of his pickup truck to change a flat tire on the side of the highway was insured when struck by an unknown motorist); *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.,* 318 N.C. 534, 350 S.E.2d 66 (1986) (hunter injured reaching into vehicle to get a rifle was "using" the vehicle and therefore insured); *Kohl v. Union Ins. Co.,* 731 P.2d 134 (Colo.1986) (hunter shot as he was removing his shotgun from his vehicle was insured); *Joins v. Bonner,* 28 Ohio St.3d 398, 504 N.E.2d 61 (1986) (child was insured when killed while crossing street after exiting vehicle); *Michigan Mut. Ins. Co. v. Combs,* 446 N.E.2d 1001 (Ind.

In a case with facts quite similar to those in the instant case, the Colorado Court of Appeals held that underinsured motorist coverage applied to a construction worker using his employer's insured truck while he was working on the side of the road. In *McMichael v. Aetna Ins. Co.*, 878 P.2d 61 (Colo.Ct. App.1994), *aff'd*, 906 P.2d 92 (Colo.1995), the Court considered the case of an injured worker employed in the construction and repair of highways. The plaintiff's employer had provided him with a truck to carry tools, special barricades and cones. The worker parked the truck in the median, turned on the vehicle's beacons and emergency flashers, removed a cement saw from the truck and began to cut a concrete joint in the road directly in front of the truck. A vehicle with frosted windows left the roadway and struck the plaintiff. 878 P.2d at 62. After settling with the defendant for his policy limits, the plaintiff sought underinsured motorist coverage benefits from his employer's automobile insurance policy.

The insurance company argued that the policy covered only the "named insured" and anyone else "occupying" a covered auto. The plaintiff argued that the "occupying" requirement in the policy violated Colorado public policy because Colorado law requires coverage for the "use" of a vehicle, and the Colorado Court of Appeals agreed. The Colorado Court stated:

> An accident occurs on account of the "use" of a motor vehicle, ... if the injury that forms the basis of the claim is causally related to a conceivable use of the insured vehicle that is not foreign to its inherent purpose. While the claimant must establish that the accident would not have oc-

curred but for the vehicle's use, it is not necessary to establish that the vehicle was moving or that the vehicle was the sole cause of the accident. It is sufficient to demonstrate that the injury originated in, grew out of, or flowed from the use of the vehicle.

*McMichael*, 878 P.2d at 64 (citations omitted). The Court concluded that the employer's truck was equipped with flashers that warned oncoming traffic of road work, and that the truck commonly functioned as a barricade to protect employees while they worked on a roadway. Because the plaintiff was using the truck for warning and protection at the time of the accident, plaintiff's injuries arose out of the use of the truck. *Id.*

In another similar case, the Iowa Supreme Court concluded that an employee of the Des Moines Board of Waterworks struck by an uninsured motorist while he was inspecting a water main valve was covered by his employer's insurance policy. In *Simpson v. United States Fidelity & Guaranty Co.*, 562 N.W.2d 627 (1997), the employee parked his employer's truck in the curb lane of the street and exited to examine a valve near the intersection of two streets. The Iowa Court, examining facts which it found "undisputed," concluded that "[t]he truck was the valve inspector's 'toolbox on wheels.'" 562 N.W.2d at 630. The truck carried the worker's tools to complete his job, and the truck was equipped with arrow board lights, flashers, and strobe lights for safety. The truck was also equipped with a hydraulic valve operator's machine to assist in opening the valve. *Id.* The Iowa Court concluded that:

App.1983) (brother of auto owner, who was not a passenger in the disabled vehicle and did not intend to become one, arrived to repair insured vehicle and was injured by uninsured motorist while working on the engine, was insured); *Manning v. Summit Home Ins. Co.*, 128 Ariz. 79, 623 P.2d 1235 (1980) (Passenger injured standing next to vehicle waiting to assist driver in putting show chains on tires was covered); *Cocking v. State Farm Mut. Auto. Ins. Co.*, 6 Cal. App.3d 965, 86 Cal.Rptr. 193 (1970) (driver of vehicle standing on side of the road to put snow chains on the tires was insured when struck by uninsured motorist); *Whisnant v. Aetna Cas. & Sur. Ins. Co.*, 264 N.C. 303, 141 S.E.2d 502

(1965) (motorist injured while pushing vehicle off the road was insured); *Wolf v. American Cas. Co. of Reading, Pa.*, 2 Ill.App.2d 124, 118 N.E.2d 777 (1954) (Driver who got out of his car after traffic accident to exchange information with other driver was insured when struck by a third, uninsured driver). *See generally* 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance*, § 5.2 (2d ed.1992) and footnote 1 of *Genthner v. Progressive Casualty Ins. Co.*, 681 A.2d at 480, for additional similar cases where courts have interpreted insurance contracts and found coverage "because of the functional nexus between the insured vehicle and the claimant's injury." *Id.*

[W]hether Simpson was twenty feet or five feet from the truck, he was an insured of USF & G at the time he was struck by the uninsured motorist. It is clear he was in close proximity to the truck when he was injured.... He was clearly engaged in an activity relating to the use of the specialized truck. The vehicle was not merely a means of transporting persons, but was designed and equipped to aid with water valve inspection, cleanup, and repair.

562 N.W.2d at 630. The Iowa Court concluded that the worker was covered by his employer's uninsured motorist coverage policy because he was "using" the vehicle.

We believe that Liberty Mutual's policy language providing coverage only for individuals "occupying" and therefore "in, upon, getting in, on, out or off" the covered vehicle is more restrictive than the requirement in *W.Va.Code*, 33–6–31(c) of coverage for individuals "using" the vehicle. Therefore, Liberty Mutual's policy fails to provide the coverage required by West Virginia law, that is, fails to provide coverage to individuals other than the named insured who are "using" the insured vehicle. Accordingly, Liberty Mutual's policy language is unenforceable and void under *W.Va.Code*, 33–6–31, and Mr. Adkins must be afforded coverage if he was "using" his employer's vehicle when he was injured.[15]

■ We conclude that *W.Va.Code*, 33–6–31(c) requires insurance companies to provide uninsured motorist coverage, and make available underinsured motorist coverage, for any person, except a bailee for hire, who uses the insured vehicle with the express or implied consent of the named insured. The term "uses" in *W.Va.Code*, 33–6–31(c) is less restrictive than the term "occupying" as used in the Liberty Mutual policy provided to Mr. Adkins' employer. "Use" of an insured vehicle implies employing the vehicle for some purpose or object of the user.

■ Under *W.Va.Code*, 33–6–31(c), uninsured and underinsured motorist coverage must encompass injuries causally connected to the use of the vehicle, and foreseeably identifiable with the normal use of the vehicle. Whether or not an injury arose from the "use" of a motor vehicle within the contemplation of *W.Va.Code*, 33–6–31(c) depends upon the factual context of each case.

Applying our ruling today to the case at hand, we are unable to determine whether the circuit court correctly ruled that Mr. Adkins should have been covered by Liberty Mutual's underinsured motorist policy. The circuit court's sole finding was entirely conclusory: "the Court finds that Gary Adkins is an insured within the meaning of the insurance policy issued by Liberty Mutual Insurance Company to Champagne–Webber, Inc., the employer of Gary Adkins." We are unable to assess what facts the circuit court relied upon in reaching this conclusion, and what legal analysis was pursued to grant summary judgment to Mr. Adkins.

In their oral argument before the Court, the attorneys for both sides presented seemingly different interpretations of Mr. Adkins' situation. Counsel for Liberty Mutual suggested that Mr. Adkins merely used his company truck to drive to the work site, and abandoned the vehicle to set about doing other work, including placing barrels on the highway. Counsel for Mr. Adkins stated that the appellee was using the truck to inspect the barrels, had just exited his vehicle, and was merely resetting several knocked-over barrels approximately ten to fifteen feet from his truck.

Under *Fayette County National Bank, supra*, we reverse the circuit court's decision and remand the case for further develop-

---

**15.** A similar result may be reached through a literal reading of the "in, upon, getting in, on, out or off" definition of "occupying." As one court considering the definition of "occupying" put it:

    If this definition is taken literally, "occupying" means anywhere "out" or "off" the vehicle, as the word "getting" does not modify either of these two words, but only the word "in." There is no conjunction before "getting in" as

there would be required for the word "getting" to modify "out," "on," and "off" as well as "in." Accordingly, a person "out," or "off" of the vehicle need not be "getting" out or "getting" off, but is within the policy definition of "occupying" when he is "out" or "off" of the vehicle so long as there is a reasonable relationship to the vehicle at the time.
    *Pennington v. Ohio Cas. Ins. Co.*, 63 Ohio App.3d 527, 531, 579 N.E.2d 507, 509 (1989).

**158**

ment. On remand, the circuit court should examine the factual record, pursuant to *W.Va.R.Civ.P.* Rule 56, and establish those facts that are relevant, determinative of the issues and undisputed. The varying positions presented by counsel to this Court may prove to be merely different characterizations placed upon undisputed facts. If the matter is again resolved by summary judgment for either party, the court should set forth these facts in its summary judgment order along with its legal reasoning.

Accordingly, the December 26, 1995 order of the circuit court is reversed, and the case is remanded for reconsideration consistent with this opinion.

Reversed and remanded.