**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PROGRESSIVE PALOVERDE INSURANCE
COMPANY,

　　　　　　　　*Plaintiff-Appellant,*

v.

HARTFORD FIRE INSURANCE COMPANY,
　　　　　　　　*Defendant-Appellee.*

⎱ No. 03-1195

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph Robert Goodwin, District Judge.
(CA-02-52-2)

Argued: October 31, 2003

Decided: January 23, 2004

Before LUTTIG and SHEDD, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

Reversed and remanded by published opinion. Judge Luttig wrote the
opinion, in which Judge Shedd and Senior Judge Michael joined.

## COUNSEL

**ARGUED:** Robert Carter Elkins, CAMPBELL, WOODS, BAGLEY,
EMERSON, MCNEER & HERNDON, P.L.L.C., Huntington, West
Virginia, for Appellant. Sarah Jane Anderson, DICKIE, MCCAMEY
& CHILCOTE, Wheeling, West Virginia, for Appellee. **ON BRIEF:**

Laura L. Gray, CAMPBELL, WOODS, BAGLEY, EMERSON, MCNEER & HERNDON, P.L.L.C., Huntington, West Virginia, for Appellant.

## OPINION

LUTTIG, Circuit Judge:

Progressive Paloverde Insurance Company ("Progressive") brought suit against Hartford Fire Insurance Company ("Hartford"), seeking a declaratory judgment that Hartford was the primary insurer for injuries sustained by Timothy Freeman on July 14, 1998. The district court dismissed Progressive's claim at summary judgment, finding that Progressive, not Hartford, was the primary insurer for Freeman's injuries. Because we hold that Hartford's policy provided primary coverage and that Progressive's policy was only for excess coverage in this circumstance, we reverse.

I.

The parties do not dispute the facts giving rise to the litigation. On July 14, 1998, Timothy Freeman, an insured of Progressive, hit a curb as he drove out of the parking lot of Thomas Memorial Hospital in South Charleston, West Virginia, flattening the right front tire of his car. Freeman called the American Automobile Association (AAA) for help, and AAA communicated his request to American Towing, a local towing company. American Towing, in turn, sent employee Leslie Davis in a tow truck to assist Freeman. The tow truck was insured by Hartford.

After changing Freeman's tire, Davis moved the tow truck across the street to a gravel parking lot where Freeman could more comfortably complete the various forms relating to the accident. Freeman followed on foot, leaving his car behind him on the other side of the road. Freeman and Davis then stood facing the tow truck's left side, with their backs to the road, while Freeman used the truck's bed as a writing surface. As Freeman was signing the necessary paperwork, both he and Davis were hit from behind by an unidentified motorist, who, immediately thereafter, drove away.

Freeman filed suit in West Virginia state court against the unidentified driver for the injuries he sustained as a result of the hit-and-run accident. As required by West Virginia law, Progressive appeared on the unidentified motorist's behalf and ultimately settled Freeman's claim by paying him $100,000 in compensation for his injuries and an additional $10,000 for the release of any claims of bad faith that Freeman may have had against Progressive. Freeman also agreed, as part of the settlement, to assign to Progressive any additional claims that he may have had for coverage under any other insurance policy.

Shortly thereafter, on January 22, 2002, Progressive filed suit against Hartford in federal district court. In its suit, Progressive asked the court to find that Hartford, not Progressive, was the primary insurer for Freeman's injuries from the July 14, 1998 accident, and to order Hartford to reimburse Progressive for the amount it paid to Freeman for his injuries. The district court dismissed Progressive's claim at summary judgment, reasoning that, although Freeman was covered by the uninsured motorist provisions of both the Progressive and Hartford insurance polices, Hartford was not obligated to reimburse Progressive because Progressive's policy provided primary coverage to Freeman.

Both Progressive and Hartford appeal from this judgment. Progressive argues that the district court erred in holding that its policy provided primary uninsured motorist coverage for Freeman's injuries and in failing to consider whether Hartford's policy also provided primary coverage. Hartford argues that the district court erred in finding that Hartford's policy covered Freeman at all.

## II.

We address first Hartford's argument that the district court erred in holding that Freeman was covered by the uninsured motorist provisions of the Hartford policy. Based on the plain and unambiguous language of the Hartford policy, we disagree with Hartford that the district court erred. Accordingly, we affirm the district court's holding in this respect.

The Hartford policy reads, in relevant part, as follows:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured" or "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured," or "property damages" caused by an "accident."

J.A. 113. Under the policy, the term, "insured," includes the named insured on the policy, as well as, "anyone else 'occupying' a covered 'auto,'" J.A. 114; the term, "occupying," "means in, upon, getting in, on, out or off," J.A. 115. The district court held that Freeman was an "insured" under the Hartford policy because, at the time of the accident, he was "upon" — and, therefore, "occupying" — the tow truck.

On appeal, Hartford does not dispute that the district court was correct in finding that its policy, as written, covers Freeman. Rather, it contends that, under the West Virginia Supreme Court's decision in *Adkins* v. *Meador*, 494 S.E.2d 915 (W. Va. 1997), its policy may not be read as it was written, and that the term "occupying" must be replaced with the term "using," in order to bring the policy into compliance with the statutory requirements of West Virginia law. So construed, Hartford argues, its policy would not cover Freeman.

We reject this argument because the Hartford policy, as applied to the injury sustained by Freeman, provides coverage consistent with the requirements of state law and, therefore, need not be construed against the plain meaning of its terms as was required in *Adkins*. That is, in contrast to *Adkins*, in which the insurance policy at issue denied coverage to an individual who would have been covered had the policy included the minimum level of coverage required by statute, the Hartford policy provided coverage to Freeman on its own terms. Therefore, with regard to Freeman, the policy did not provide coverage that was "more restrictive" than the minimum level of coverage required by West Virginia Code section 33-6-31(c). In such situations, "[w]here provisions of an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation or public policy, the provisions will be applied and not construed." *Deel* v. *Sweeney*, 383 S.E.2d 92, 94 (W. Va. 1987).

Because we have no cause to interpret the plain and unambiguous meaning of the policy's terms to mean anything other than what they

say, the holding of the district court that the Hartford policy covers the injuries sustained by Freeman on July 14, 1998 was correct.

## III.

Having decided that Freeman was covered by the Hartford policy, and it being undisputed that Freeman's injuries were covered by the Progressive policy, we turn next to the question of the priority of coverage provided by the two policies. Based on the plain language of both policies, we hold that Hartford, not Progressive, was the primary insurer.

## A.

Considering first the priority of coverage under the Progressive policy, we conclude that the district court erred in finding that that policy provides primary coverage over Freeman's injuries.

The "Other Insurance" clause in the Progressive policy provides as follows:

> If there is other applicable uninsured or underinsured motorist coverage, we will pay only our share of the damages. Our share is the proportion that our Limit of Liability bears to the total of all available coverage limits. Any insurance we provide *shall be excess* over any other uninsured or underinsured motorist coverage, *except for bodily injury to the [policyholder] or a relative when "occupying" a covered vehicle*.

J.A. 21 (emphases added). "Occupying" is defined in the Progressive policy as "in, on, entering, or exiting." Thus, the Progressive policy provides "excess" coverage, unless Freeman sustained his injuries while "in, on, entering, or exiting" his car. The district court found, and we agree, that, "under Progressive's literal definition of the term 'occupying,'" Freeman does not fall within the terms of this exception. J.A. 21. At the time of the accident, Freeman was across the street, leaning against the tow truck, not "in, on, entering, or exiting" his vehicle.

The district court did not, however, apply the terms of the policy as it was written. Rather, it mistakenly invoked *Adkins* and read the term "occupying" in the "Other Insurance" clause to mean "using." This was error. As recounted above, *Adkins* did not hold that the term "occupying" is always void in favor of the term "using" when it appears in an uninsured motorist policy, *see* J.A. 21; rather, that case held that, "[w]hen the language of an insurance policy is contrary to statute and therefore void, the policy should be construed to contain the coverage required by West Virginia law." *Adkins*, 494 S.E.2d at 920. Because section 33-6-31 does not address in any way the allocation of coverage between carriers, the use of the term "occupying" in the "Other Insurance" provision in Progressive's policy does not conflict with any requirement of West Virginia law. Therefore, Progressive was free to "incorporate such terms, conditions and exclusions . . . as may be consistent with the premium charged," *Deel*, 383 S.E.2d at 94, and the courts must enforce the policy as written.

As discussed above, when the plain language of the "Other Insurance" clause of the Progressive policy is applied to this case, it is clear that the policy provides only excess coverage for Freeman's accident. The district court erred in holding otherwise.

## B.

Turning finally to the question of whether Hartford's coverage with respect to Freeman's injuries was primary or excess only, we hold that that coverage was indeed primary.[1]

The "Other Insurance" provision of the Hartford policy provides, in relevant part, as follows:

---

[1]As a threshold matter, the district court erred by apportioning all liability to Progressive without even considering whether the Hartford policy provided primary coverage over Freeman's accident. After all, even accepting the district court's conclusion that the Progressive policy provides primary coverage for Freeman's injuries, if the court had also concluded that the Hartford policy provided primary coverage, then the court would have been bound to pro-rate liability for Freeman's injuries between the two companies, in accordance with the "Other Insurance" clauses in both policies. J.A. 74 (Progressive); J.A. 109-10 (Hartford).

> For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage is excess over any other collectible insurance.

J.A. 109. Hartford contends that its policy does not provide primary coverage to Freeman because *Freeman* did not own the tow truck. This sleight of hand is easily dismissed. It bears reminding that the Hartford policy is a policy agreement between Hartford and American Towing. "You," as it is used in the policy, refers not to Freeman, as Hartford would have us believe but, rather, to American Towing, the named insured in the policy. *See* J.A. 102 (stating that, "the words 'you' and 'your' refer to the Named Insured in the Declarations"). Thus, because American Towing owns the tow truck, the Hartford policy provides primary insurance for the tow truck, which includes coverage for injuries sustained by persons like Freeman who, as we previously determined, are injured while occupying that tow truck. That Freeman is not the owner of the tow truck is simply irrelevant to the question of whether the Hartford policy provides primary coverage in this case.

We hold therefore that Hartford contracted to provide primary coverage over Freeman's injuries, consistent with West Virginia's bright line rule "'that insurance follows the automobile, rather than the driver.'" *See Allstate Insurance Co.* v. *State Automobile Mutual Insurance Co.*, 364 S.E.2d 30, 33 (W. Va. 1987).

IV.

For the reasons stated, the judgment of the district court is reversed and the case is remanded with instructions to enter an order compelling Hartford to reimburse Progressive for the $100,000 that Progressive paid to Freeman for his injuries.

*REVERSED AND REMANDED.*